UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No.
04-12398-RCL

| | |
|---|---|
| SPGGC, INC., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | ) |
| | ) |
| THOMAS F. REILLY, Attorney General | ) |
| | ) |
| Defendant | ) |
| | ) |

## MEMORANDUM OF LAW OF
## ATTORNEY GENERAL THOMAS F. REILLY
## IN SUPPORT OF HIS MOTION TO DISMISS

### I. INTRODUCTION

This action was intended as a preemptive strike. Faced with an imminent lawsuit in

Massachusetts state court charging that its gift cards failed to comport with Massachusetts law,

SPGGC, Inc. ("SPGGC") filed this federal case seeking to block Attorney General Thomas F.

Reilly (the "Attorney General") from enforcing state law against SPGGC.

In the time since this case was commenced, the Attorney General has indeed filed his

state-court action against SPGGC, alleging that the gift cards that SPGGC sells to Massachusetts

consumers violate applicable provisions of the Massachusetts Gift Certificate Law and the

Massachusetts Consumer Protection Act, G.L. c. 93A. SPGGC has responded by removing the

Attorney General's suit to federal court, and by moving to dismiss that action on grounds that the

Massachusetts statutes in question are preempted by federal law, and that the Massachusetts laws impermissibly burden interstate commerce, in violation of the Commerce Clause.

SPGGC now seeks to elevate these defenses to independent federal causes of action against the Attorney General, and to use them as a vehicle for invoking this Court's federal-question jurisdiction. As set forth more fully below, however, this change in characterization is insufficient to create subject-matter jurisdiction in this Court. Accordingly, under the well-pleaded complaint rule, this action should be dismissed for want of federal jurisdiction. At a minimum, this Court should abstain from hearing this case, in favor of permitting the Attorney General's action against SPGGC to proceed to judgment in state court.

## II. BACKGROUND

SPGGC, an affiliate of the Simon Property Group, Inc. which owns and operates 14 malls in Massachusetts, sells and promotes for sale in Massachusetts a gift certificate which it calls the Simon Gift Card. On November 1, 2004, Attorney General Thomas F. Reilly informed Simon Property Group, Inc. by letter of his intention to file a lawsuit against it because its gift cards do not comply with Massachusetts law: they expire in one year (though state law, G.L. c. 200A, § 5D, requires that they not expire before seven), and Simon Property Group, Inc. charges "dormancy" and other fees against the balance remaining on the cards (which state law, G.L. c. 200A, § 5D and G.L. c. 255D, § 1, contemplates not be charged). (The Attorney General's November 1, 2004 letter is attached here as Exhibit A.) The parties held an in-person meeting at the Attorney General's Office on November 10, 2004, to confer about the Attorney General's intended action. The parties discussed scheduling a second meeting, but instead, on November 12, 2004, SPGGC filed this action to restrain the Attorney General from pursuing his

2

contemplated lawsuit, on the grounds that the National Bank Act preempts it.

SPGGC signaled its decision to discontinue conferring with the Attorney General when it filed the complaint in this action, and on November 15, 2004, the Attorney General filed his lawsuit in the public interest on behalf of the Commonwealth, pursuant to G.L. c. 93A, § 4, to enjoin Simon Property Group, Inc. from selling gift cards which violate Massachusetts law. The Attorney General's suit was filed in the Suffolk County Superior Court Department. Simon Property Group, Inc. removed that suit to federal court the following day, on November 16. In addition to this Motion to Dismiss, the Commonwealth has filed a motion to remand that action.

By this action, SPGGC seeks a declaration that the provisions of the Massachusetts gift certificate law are not applicable to it "because of preemption by the National Banking Act of 1864, 12 U.S.C., § 21 et seq. and regulations issued by the Office of the Comptroller of the Currency." (SPGGC Complaint, page 9.) SPGGC filed an amended complaint on November 29, 2004, and now additionally seeks a declaration that the Massachusetts Gift Certificate Law "constitutes an improper interference by Massachusetts in interstate commerce in violation of the Commerce Clause of the United States Constitution, U.S. Const. Art. I, § 8, cl. 3." (SPGGC, Inc. Amended Complaint, ¶ 41.)[1] This Court lacks subject matter jurisdiction over these claims because, under the well-pleaded complaint rule, these federal defenses to the Attorney General's state-law claim do not establish subject matter jurisdiction in a federal court. In the alternative, this Court should abstain from exercising jurisdiction over SPGGC, Inc.'s federal claims, upon the remand by this Court of the Commonwealth's action previously pending in state court, under

---

[1] In addition to adding a Commerce Clause count, SPGGC, Inc.'s Amended Complaint removed a pendent state law claim which was in the original complaint, recognizing perhaps that such claim was clearly barred by the Eleventh Amendment to the United States Constitution.

the principles of federalism and comity set forth in Younger v. Harris, 401 U.S. 37 (1971) and Railroad Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).

## III. FACTS

According to SPGGC's complaint, SPGGC. (hereinafter referred to as "Simon") began selling and promoting Simon Gift Cards in its 14 Massachusetts shopping malls in 2003. (Simon Amended Complaint, ¶ 5.)  According to Simon, these Gift Cards resemble a credit card in appearance (Simon Am. Compl., ¶ 8), are programmed to establish a balance (Simon Complaint, ¶ 8), have a Visa logo on them (Simon Am. Compl, ¶ 7, and Exhibit A to Simon's Complaint), and may be used not only at retail establishments in Simon Malls but "anywhere Visa debit cards are accepted." (Simon Am. Compl., ¶ 9.)  Simon charges fees to the purchaser and gift recipient, including a $1.50 purchase fee, a $2.50 "dormancy" fee which is charged against the balance on the card each month after the sixth month, a $.50 fee charged against the card's balance to call a Simon-supplied phone number to check the card's balances, and a $7.50 "reissue" fee charged against the card's balance if the gift card recipient seeks to have the card reissued if balances remain on the card after a year.  (Simon Am. Compl., Exhibit C; and ¶ 13.)[2]  The Simon Gift Cards expire one year from when they are purchased.  (Simon Am. Compl., ¶ 21.)

The Commonwealth's state court complaint alleges that the Simon Gift Card fees and one-year expiration date violate the Massachusetts Gift Certificate law[3] and the Massachusetts

---

[2]  Simon's Gift Cards expire one year after they are purchased - and Simon keeps whatever balance remains on the card - unless a gift card recipient who has received and studied the difficult-to-read disclosures requests that the balances that remain after one year be transferred to a new card.  Simon charges $7.50 for this service.

[3]  G.L. c. 200A, § 5D provides in relevant part that, "[a] gift certificate, as defined in section 1 of chapter 255D, sold or offered to be sold shall be valid for not less than 7 years after

Consumer Protection Act.[4]  The Commonwealth's action seeks remedies which are authorized by

G.L. c. 93A, § 4, including injunctive relief, an order for the payment of civil penalties,

attorneys' fees and costs, and appropriate restitution; the Commonwealth's action does not raise

any federal claims.

Simon's Amended Complaint invokes the National Bank Act as allegedly preempting

application of Massachusetts law to the Simon Gift Cards, without identifying specific provisions

of federal law that give rise to the claim of preemption.  Even if it had done so, however, this

bare claim of preemption, standing alone, is insufficient to establish jurisdiction in this Court.

## IV.  ARGUMENT

This Court lacks subject matter jurisdiction over Simon's federal claims, and this action

should be dismissed.  Under the "well-pleaded complaint rule," federal defenses to state law

claims do not create federal question jurisdiction.  Caterpillar v. Williams, 482 U.S. 386, 393

(1986).  Simon does not aver and cannot establish that the Massachusetts gift certificate law is

completely preempted by the National Bank Act since Simon is not a national bank and the

Simon Gift Card is not subject to the National Bank Act ("NBA") because it is unrelated to any

"bank" functions.  See, Beneficial National Bank v. Anderson, 539 U.S. 1, 6-7 (2003) (a narrow

---

its date of issuance."  G.L. c. 255D, § 1 provides in the definition of a gift certificate, that "[a]
gift certificate shall include an electronic card with a banked dollar value, a merchandise credit, a
certificate where the issuer has received payment for the full face value for the future purchase or
delivery of goods or services and any other medium that evidences the giving of consideration in
exchange for the right to redeem the certificate, electronic card or other medium for goods, food,
services, credit or money of at least an equal value."

[4]  The Commonwealth alleged that Simon engaged in (a) unfair practices by charging
purchase fees, dormancy fees, balance inquiry fees and card re-issuance fees which are
unconscionable or otherwise unfair, and (b) deceptive practices by not adequately disclosing the
fees which it charges to consumers, in violation of G.L. c. 93A, § 2(a).

exception to the well-pleaded complaint rule exists where state law is "completely" preempted by federal law; Section 85 of the National Bank Act completely preempts state laws related to usurious interest rates); and Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 33 (1996) (NBA preempts state law only to extent that state law directly conflicts with the Act or infringes upon the business of banking). Simon's Commerce Clause claim is also a defense to the Commonwealth's state court action, and may be raised as such there, but cannot create federal question jurisdiction here. Heichman v. American Telephone & Telegraph Co., 943 F.Supp. 1212, 1218 (D. Calif. 1995).

Alternatively, this Court should abstain from exercising jurisdiction on the grounds of federalism and comity stated in Younger v. Harris, 401 U.S. 37 (1971), and Railroad Comm'n v. Pullman Co., 312 U.S. 496 (1941).

> A.  The Court Lacks Subject-Matter Jurisdiction Because Simon's Federal
> Claims Are Merely Federal Defenses to the Attorney General's State Law
> Claims.
>
> 1.  Under the Well-Pleaded Complaint Rule, Federal Defenses Do Not
> Create Federal Question Jurisdiction.

Title 28 U.S.C. §1331 grants to federal district courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." To determine whether a civil action arises under federal law for purposes of §1331, the Court applies the "well-pleaded complaint rule." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Under this "long settled" rule, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." Id. at 63 (emphasis added).

A consequence of the well-pleaded complaint rule is that federal defenses to state-law

6

claims do not create federal question jurisdiction. "[I]t is now settled that a case may not be removed to federal court on the basis of a federal defense, including the defense of preemption, even if both parties concede that the federal defense is the only question truly at issue." Caterpillar v. Williams, 482 U.S. 386, 393 (1986) (emphasis in original); see also Merrell Dow Pharmaceuticals', Inc. v. Thompson, 478 U.S. 804, 808 (1986) ("a defense that raises a federal question is inadequate to confer jurisdiction"). The Supreme Court has unequivocally stated:

> By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby.

Gully v. First Nat'l Bank in Meridian, 299 U.S. 109, 116 (1936).[5]

Simon's suit – a preemptive defense to the Attorney General's state-court enforcement action presented here as an affirmative cause of action    does not create subject matter jurisdiction in this Court. The underlying causes of action in this controversy, namely the Attorney General's claims under the Massachusetts Gift Certificate Law and Consumer Protection Act, arise exclusively under state law. The relief sought from this Court is expressly designed to *block* the Attorney General's enforcement of state law. Accordingly, Simon's federal complaint does not "arise under" federal law.[6]

---

[5] Indeed, Simon has moved to dismiss the Commonwealth's state court action, and has raised its federal claims as grounds for the motion to dismiss. Simon has demonstrated that its claims are *defenses* – defenses which the Massachusetts trial court is well-equipped to hear.

[6] Simon does not bypass the well-pleaded complaint rule or create federal jurisdiction by invoking the Declaratory Judgment Act, 28 U.S.C. §2201. The Act is a procedural device only, by which "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950) (emphasis added). As a result, the availability of declaratory relief in federal courts does not blunt the force of the well-pleaded complaint rule. See id. at 672.

Simon asserts that Massachusetts state laws, and the Attorney General's enforcement of them, are preempted by the National Bank Act, and seeks a declaration to this effect. (Simon Am. Compl., ¶ 35.) While the doctrine of "complete preemption" does provide a very narrow exception to §1331 standing requirements under the well-pleaded complaint doctrine, it does not apply to the Attorney General's claims.[7]  Complete preemption occurs in the rare situation where a federal statute wholly displaces a state-law cause of action. See, e.g., Avco Corp. v. Machinists, 390 U.S. 557 (1968) (Labor Management Relations Act both preempts state law and authorizes removal of actions seeking relief only under state law). When the federal statute completely preempts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.  Beneficial Nat'l Bank v. Anderson, 589 U.S. 1, 8 (2003).  To date, however, the Supreme Court has found complete preemption only under very limited circumstances: in actions under the Labor Management Relations Act and Employee Retirement Income Security Act, and in actions premised on preemption of state law usury claims by the National Bank Act, where those claims are brought against a national bank.  See , respectively,  Magerer v. John Sexton & Co., 912 F.2d 525, 528 (1st Cir.1990) ("any state law claim which is subject to complete preemption under Section 301 of the LMRA is considered a claim arising under federal law within the district court's jurisdiction"); Metro Life Ins. Co. v. Taylor, 481 U.S. 58, 63-67 (1987) (the doctrine of complete preemption as to ERISA's civil enforcement provisions provides for federal removal jurisdiction over any state law claims that in substance seek relief that is otherwise within the

---

[7] Not only has Simon failed to allege which provisions of the National Bank Act give rise to its claim of preemption, Simon does not make the allegation that the Act "completely" preempts state law.  Simon's omissions are telling.

8

scope of ERISA remedy provisions. 29 U.S.C. § 1132(a)); and <u>Beneficial National Bank v.</u>
<u>Anderson</u>, 539 U.S. 1, 6-7 (2003).

<u>Beneficial</u> concerned application of Alabama usury laws – which implicate core banking
functions otherwise regulated by §§ 85 and 86 of the NBA – to a national bank. As set forth
more fully below, however, <u>Beneficial</u> did not hold that all state laws touching upon subjects
addressed by the NBA were completely preempted; rather, its holding was narrowly limited to
the complete preemption afforded by the NBA vis-a-vis state usury claims. Simon can point to
no analogously broad provision of the NBA that might effect complete preemption of state gift
certificate laws; indeed it points to none at all.

In other narrow circumstances, a court may find a complaint raises a "federal question,"
and invokes federal court jurisdiction pursuant to 28 U.S.C. §1331, where plaintiff seeks a
declaratory judgment that a public official's enforcement of state law will violate federal law,
thereby depriving plaintiff of a substantive right under that federal law. <u>Loc. Union No. 12004,</u>
<u>United Steelworkers of America v. Comm. of Massachusetts</u>, 377 F.3d 64, 74 (1st Cir. 2004)
(citing <u>Ex Parte Young</u>, 209 U.S. 123, 160-2 (1908), for the proposition that a federal court
retains jurisdiction to enjoin a state actor's violation of federal law). In such a case, plaintiff
must make a colorable claim that the activity it asserts will be barred by force of state law is in
fact expressly *permitted* by federal law. Simon does not and cannot make such a claim because,
as is set forth in the sections that follow, the National Bank Act does not specifically authorize
Simon's conduct. For this reason, Simon does not state a federal question, and this Court lacks
jurisdiction over its claims.

a.    The National Bank Act Does Not Completely (Or Otherwise) Preempt the Massachusetts Gift Certificate Law or the Consumer Protection Act as to Simon Gift Cards.

Simon fails to make any specific factual allegations to support its assertion that the National Bank Act preempts Massachusetts law, or to cite to any specific section of the National Bank Act which might do so. The averments Simon does make fail to gain it the federal jurisdiction it desires, for two reasons. First, the Attorney General has not sued and does not intend to sue a national bank: no national bank is a party to either the Attorney General's suit or Simon's complaint. Second, the National Bank Act does not provide Simon with the sort of blanket preemption protection that it asserts; instead, the National Bank Act specifically contemplates state regulation of national banks where such regulation is not inconsistent with a specific provision of the Act or where the regulation would not affect the "business of banking." Here, far from occupying the field with respect to gift certificate regulation, the National Bank Act does not even venture onto the field; it is wholly silent on the subject. And in no way does Simon allege that its gift card implicates the "business of banking" such that it would be entitled to the preemptive shelter of the NBA.

1.    Simon is Not a National Bank and Fails to Aver Why it Should Have the Preemptive Protections of the National Bank Act.

Simon, obviously, is not itself a national bank but asserts in its Complaint that the National Bank Act nevertheless preempts the application of Massachusetts laws to the Gift Cards which it sells and promotes for sale because the cards are "issued" by the Bank of America, which is a national bank. Since a national bank is not even a party to this suit, Simon might have taken pains to provide full allegations concerning Bank of America's role in the Simon Gift

10

Cards, together with an allegation of federal-law rights enjoyed by Bank of America that would be impinged by application of Massachusetts law to the Gift Cards. It did neither. Instead of describing what Bank of America actually does for Simon, Simon merely states that the Gift Cards are "issued" by Bank of America.[8]

Here are the strongest facts averred by Simon related to its conclusion that the Simon Gift Card is "issued" by the Bank of America:

- "[T]he card itself is the property of BOA." Complaint, ¶ 14.

- "The Simon Giftcard is a Visa co-branded prepaid card between BOA and Simon. As such, it is issued by BOA and must comply with federal banking regulations and all Visa U.S.A., Inc. regulations." Complaint, ¶ 15.

- "The terms and conditions for the Simon Giftcard are based substantially on the terms and conditions of BOA's own branded gift card. The terms and conditions for the Simon Giftcard, and the design and card carrier in which the Giftcards are presented, must be reviewed and approved by BOA." Complaint, ¶ 16.

- "BOA also reviews, and must approve, the physical properties and design of the front and back of the Giftcard itself." Complaint, ¶ 17.

The most that can be discerned from Simon's allegations is that Simon has a written agreement with Bank of America concerning Simon's Gift Cards, and this agreement permits the

---

[8]     It is unclear what it means to "issue" a gift card, and so this conclusory phrase is particularly unhelpful. This is especially true where, as here, the Simon Gift Cards are actually "issued" by a third party company called Wild Card, Inc. Wild Card, Inc. also monitors the Gift Cards' balances. (See Commonwealth's Complaint, ¶ 14.) Simon seems to suggest by the phrasing that Bank of America has issued a product like a credit card which is regulated by federal laws. But there are no similar laws which apply to Gift Cards.

Bank of America some say as to the Gift Card terms and conditions. These allegations are not enough to establish that the National Bank Act applies here at all, and Simon does not (and cannot) explain how it does.

Simon wants to suggest, perhaps, that it has acted as a sort of agent for Bank of America as concerns the sale of its Gift Cards.[9] The factual averments are not there to support this conclusion, but even if one were to assume that Simon did act as agent for Bank of America this being perhaps the most useful conclusion that could be drawn from Simon's invocation of the National Bank Act - the law would still not support Simon's theory that its Gift Cards enjoy preemption from state regulation because the bank itself was not named as a party to the Commonwealth's action. The National Bank Act applies only to national banks, not to non-bank entities (such as shopping malls) engaged in business partnerships with national banks. See Carson v. H&R Block, Inc., 250 F. Supp. 2d 669, 674 (S. D. Miss. 2003) (holding that a state lawsuit against H & R Block based upon misrepresentations made by H & R Block in connection with tax refund anticipation loans provided to consumers by a national bank associated with H & R Block did not raise federal questions under the National Bank Act, for two reasons: (1) H & R Block itself was not a national bank, and (2) the issues raised by the litigation -- misrepresentations concerning the costs of the loans -- were not issues covered by the National Bank Act). See also Colorado v. ACE Cash Express, Inc., 188 F.Supp.2d 1282, 1285 (D. Colo. 2002) (holding, in a suit brought by the Colorado Attorney General, that the National Bank Act did not preempt Colorado's unfair trade practices claims because the defendant financial

---

[9] To the extent Simon also suggests that since its Gift Cards bear a Visa logo, they are by definition a national bank product, this suggestion is wrong; Visa itself is not a national bank.

institution was neither a national bank nor a subsidiary of one; disagreeing with defendant's

contention that its status as a lending agent for a national bank brought plaintiff's claims under

the Act), and Long v. ACE Cash Express, Inc., 2001 WL 34106904 (M.D. Fla. 2001) (National

Bank Act does not apply because defendant is not a national bank).[10]   In his complaint the

---

[10]   The ACE Cash Express and other "pay day" lending cases have repeatedly found that when state laws are sought to be enforced against a local loan agent, those state laws are not preempted by the National Bank Act even when the ultimate lender is a national bank.  See BankWest, Inc. v. Baker, 324 F.Supp. 2d 1333, 1347 (N.D. Ga. May 13, 2004) ("enforcement of state laws restricting payday lending against such nonbank entities does not implicate the federal banking laws"); Flowers v. EZPawn Oklahoma, Inc., 307 F. Supp. 2d 1191, 1205-1206 (N.D. Okla. Feb. 3, 2004) (same), and Goleta Nat'l Bank v. O'Donnell, 239 F.Supp.2d 745, 753-754 (S.D. Ohio) (same).  Pay day lenders provide loans to consumers which are typically secured by a consumer's pay check or by a post-dated check that coincides with the consumer's next pay day, and such loans are often very costly to consumers.  See, e.g., Jump v. ACP Enterprises, Inc., 224 F.Supp.2d 1216, 1217 (N.D. Ind. 2002).  In order to avoid being charged under state laws which invariably would hold such loans as being illegal, pay day lenders often associate themselves with federal banks in an attempt to avoid liability under state law.  Even the Office of the Comptroller of the Currency and the Office of Thrift Supervision have taken note of and condemned this practice, which has come to be known as "Rent-a-Bank" or "Rent-A-Charter."  See Joint News Release of OCC and OTS dated November 27, 2000 (2000 WL 174018, *2) ("According to Mr. Hawke [then the Comptroller of the Currency] and Ms. Seidman [then the Director of the Office of Thrift Supervision], vendors who have targeted national banks and federal thrifts as a means of marketing such products free from state and local consumer protection laws should not automatically assume that the benefits of the bank or thrift charter will accrue to them by virtue of such relationships, or that the OCC or OTS will defend their efforts to avoid state and local laws if challenges are raised").

Simon may point to Hudson v. ACE Cash Express, Inc., 2002 WL 1205060 (S.D. Ind.) for support.  This case does not help Simon, though, because the consumer there named the national bank that supplied the loan and raised usury claims (and other related claims) against it and the other parties.  Because Section 85 of the National Bank Act completely preempted the consumer's claim, the district court dismissed the action.  In contrast, the Attorney General has not named Bank of America as a party, nor raised usury or other preempted claims against Simon.  In addition to being inapposite, Hudson has also been discredited.  See, e.g., BankWest, Inc. v. Baker, 324 F.Supp.2d at 1350-1 (lenders and their agents do not have the right to define themselves as national banks "for the sole purpose of avoiding the application of state usury laws," finding that the Hudson court was wrong to accept the lender and agent's definition of themselves as a national bank protected from the reach of state law by the National Bank Act).

Attorney General seeks relief against Simon – not against a national bank  under Massachusetts law. The National Bank Act does not apply.

> 2.    The National Bank Act Covers The Business of Banking, and Does Not Preempt Massachusetts' Gift Certificate and Consumer Protection Laws, Which Do Not.

Further, even if Simon alleged and could show that Bank of America's involvement actually implicates some banking functions of Bank of America, this would still not be enough for Simon to establish federal question jurisdiction in this Court. This is because the National Bank Act does not generally preempt all state laws, but only specific laws such as those that relate to usury claims, or those that would otherwise impair a bank's functions.

The National Bank Act, 12 U.S.C., §§ 21, et seq., specifically contemplates that states have "the power to regulate national banks, where . . . doing so does not prevent or significantly interfere with the national bank's exercise of its powers." Barnett Bank of Marion County, N.A. v. Nelson, 517 U.S. 25, 33 (1996). Barnett Bank is consistent with earlier decisions which found that "national banks are subject to state laws unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions." Anderson National Bank v. Luckett, 321 U.S. 233, 248 (1941). See also, First National Bank in St. Louis v. Missouri, 263 U.S. 640, 656 (1924) (affirming that "the operation of general state laws upon the dealings and contracts of national banks" is the "rule," while preemption is an "exception" that applies only when state laws expressly conflict with the laws of the United States or frustrate the purpose for which national banks were created, or impair their efficiency to discharge the duties imposed upon them by the law of the United States"), and McClellan v. Chipman, 164 U.S. 347, 357 (1896) (same).

The National Bank Act, in more recent years, has most often been cited as preempting state law where a national bank's interest rate on credit card balances or other consumer credit is higher than is permitted by the laws of a particular state. Marquette National Bank of Minneapolis v. First of Omaha Service Corporation, 439 U.S. 299 (1978) (Section 85 of the National Bank Act was found to permit a national bank, which was located in Nebraska, to "export" Nebraska's permitted interest rates into Minnesota, a state which otherwise would not have permitted such a high interest rate); Smiley v. Citibank (South Dakota), N.A.), 517 U.S. 735 (1996) (Section 85 of the National Bank Act was found to also regulate late penalties, and thus permitted Citibank to export into California the late penalties allowed by law in South Dakota); and Beneficial National Bank v. Anderson, 539 U.S. 1 (2003) (consumers' action in Alabama state court against a national bank that charged interest rates which were usurious as defined by Alabama law was preempted by Section 85 of the National Bank Act). In each of these suits, however, state laws were found to be preempted *not* because the action was brought against a national bank, but instead because the National Bank Act specifically and conclusively addressed the subject matter that formed the basis for the underlying state-law suit (i.e., the permissible range of interest rates chargeable by a national bank). Further, the National Bank Act also set forth the remedy available to the borrower who was charged a higher rate of interest than he believed was permitted. 12 U.S.C. § 86.[11]

---

[11] Thus, any reliance Simon may make upon Krispin v. May Dep't Stores Co., 218 F.3d 919 (8th Cir. 2000), is entirely misplaced. The Court there concluded that a consumer's action against a department store related to late fees imposed by the national bank which acquired the credit card accounts were preempted by Section 85 of the National Bank Act. Simon believes the case is meaningful because of the relationship between the department store and the bank, which it may think is similar to the relationship between Simon and Bank of America here. But Bank of America has not acquired (or issued) credit cards for Simon here, nor has the Attorney General

Here, this Court may properly dismiss Simon's National Bank Act count because Simon failed to allege how Bank of America is involved with Simon's Gift Cards.[12]   But assuming, arguendo, that the interests of a national bank are somehow implicated here, Simon still falls far short of articulating a federal preemption claim because it cannot point to any specific provisions within the National Bank Act which will preempt Massachusetts gift certificate laws as to these Gift Cards.  Nor does it allege that application of the Massachusetts gift certificate law to the Simon Gift Card will impede, or otherwise obstruct, the banking business as it is pursued by Bank of America or any other national bank party.

Simon both asserts and implies that because Bank of America is a national bank, a plastic gift certificate which names the Bank in fine print is therefore subject to regulation and oversight by the Office of the Comptroller of the Currency, and the Attorney General's state-court lawsuit is preempted by the National Bank Act.  Missing, though, are any facts concerning whether

---

raised any issues which in any way implicate Section 85 of the Act.

   [12]  Simon's conclusory allegations concerning the role of Bank of America are insufficient to meet the burden of establishing that this Court has federal question jurisdiction as to Simon's National Bank Act claim.  Wright & Miller, Federal Practice & Procedure, § 1350 (where a federal court is considering whether a plaintiff has met its burden of establishing federal question jurisdiction, "because of the importance of the issue to the federal judicial system, argumentative (as opposed to reasonable) inferences favorable to the pleader will not be drawn and conclusory allegations or conclusions of law will not be credited"); Campagna v. Commonwealth of Massachusetts Department of Environmental Protection, 206 F.Supp.2d 120, 121 (D.Mass. 2002) (because federal courts are courts of limited jurisdiction, federal jurisdiction is "never presumed"; instead, the plaintiff carries "the burden of demonstrating the existence of federal jurisdiction," and conclusory allegations will not be credited); dismissal aff'd by Campagna v. Massachusetts Department of Environmental Protection, 334 F.3d 150 (2003); and Crespo-Carabello v. U.S.A., 200 F.Supp. 2d 73, 75 (D. Puerto Rico 2002) (when considering whether to dismiss a complaint under Rule 12(b)(1), the "Court need not credit. . . 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like'", quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)).

Simon deposits the funds it receives from the sale of its Gift Cards into Bank of America bank accounts, and, if so, how such accounts are established and maintained.   In fact, Simon does not allege that the Simon Gift Card implicates a national bank's deposit-taking powers[13], involves any extension of credit to consumers[14], or requires the establishment of an interest rate or late penalties for missed payments[15]. The Simon Gift Card does not involve any bank functions. There can be no preemption on these facts:  the controversy here is between the Attorney General and Simon regarding the simple and straightforward matter of Simon's gift card's fees and expiration date, which violate Massachusetts laws designed to protect consumer welfare. The controversy does not even remotely touch the "business of banking" undertaken by a national bank. See, e.g., Carson v. H &R Block, Inc., 250 F.Supp.2d at 674. In the Carson case, the issues raised bore more closely than any of the issues raised here on those subjects actually

---

[13]  If funds are held by a bank in separate customer accounts, and if such funds are available to consumers at automated teller machines, for instance, then these types of bank card transactions are regulated by the Electronic Funds Transfer Act (EFTA) and Regulation E.  15 U.S.C. §§ 1693a, et seq. (the definition of the term "account" contained in § 1693a(2) makes clear that EFTA applies to individual consumer accounts), and 12 CFR, § 205.  These laws do not cover stored value cards such as the Simon Gift Cards because the Simon Gift Card funds are not held in any individual consumer deposit accounts.  The consumers do not get the protections of these laws.

[14]  When credit is extended to consumers, generally the Truth In Lending Act and Regulation Z will apply to the transactions. 15 U.S.C., §§1601, et seq., and 12 CFR §226. Because no credit has been extended where a gift certificate is at issue, these laws do not apply to the Simon Gift Cards, and consumers do not get the protections of these laws, including specifically the limitation of liability protections for lost or stolen cards which apply to credit cards but not to gift cards. See 12 CFR §226.12.

[15]  When a national bank issues a credit card, the interest rates and late fees that may be assessed for the use of the card are covered by Section 85 of the National Bank Act. There are no federal laws which govern the costs which may be imposed by a gift card, even when a gift card is issued by a national bank.

regulated by the National Bank Act: the litigation raised questions concerning the high interest rates charged by the national bank in connection with consumer loans made in anticipation of expected income tax refunds, and whether these interest rates were fairly disclosed to consumers. The Carson court analyzed whether 12 U.S.C. § 85 of the National Bank Act applied to the case and determined that it did not, noting that "district courts have overwhelmingly found that claims for failure to disclose interest charges are not within the scope of § 85 of the NBA." Id., at 673.

In its Amended Complaint, Simon also generally avers that regulations of the Comptroller of the Currency preempt Massachusetts law, again without specific citation, and suggests that the OCC agrees with its view that the Simon Gift Cards are somehow covered by the National Bank Act and subject to the oversight of that Office. Both these conclusions are wrong.

The OCC has never expressed the view that gift cards are covered by the National Bank Act. In its most comprehensive bulletin on the topic of Stored Value Card Systems, the Office of the Comptroller of the Currency reviewed the risks a national bank might face when becoming involved in stored value card systems, and cited to no existing laws on the topic. OCC Bulletin 96-48.[16]

The OCC's regulations do not preempt Massachusetts law. In its Amended Complaint, Simon does not cite to a specific preemptive regulation, but it does attach 12 CFR 7.4007 (among others) to its Appendix; this is the only remotely relevant regulation. The OCC adopted new

---

[16]    The OCC noted then that the Federal Reserve Board had contemplated amending Regulation E, the regulations which govern debit cards, among other things, to include stored value cards, but did not do so. The Federal Reserve Board is again now contemplating amending Regulation E to cover stored value cards. The current proposal, though, would specifically bring "payroll cards," stored value cards which employers use to pay employees, within the scope of Regulation E and EFTA, but specifically would *not* bring "gift cards" within the scope of Regulation E or EFTA.   69 Fed. Reg. 55996 (September 17, 2004).

preemption regulations on January 13, 2004, and 12 CFR 7.4007 provides, in relevant part, as follows:

> Except where made applicable by Federal law, state laws that obstruct, impair or condition a national bank's ability to fully exercise its Federally authorized deposit-taking powers are not applicable to national banks.[17]

This regulation, though, does not apply to Simon Gift Cards since the Massachusetts gift certificate law does not affect Bank of America's "deposit-taking functions" in any way: even if Bank of America holds Simon Gift Card funds in a deposit account of some kind -- again, a fact about which Simon is silent -- the Massachusetts gift certificate law does not purport to regulate the way in which Bank of America may hold such funds, nor does it purport to touch upon the banking relationship between Bank of America and Simon.  The most that can be said is that the Massachusetts gift certificate law regulates the conditions which Simon has attached to the Gift Card.  12 CFR 7.4007 does not prohibit this regulation.

In order to get the preemptive benefits of the National Bank Act, Simon must show that its Gift Cards are issued by a national bank, *and* that applying the state gift certificate laws to them would either infringe national banking laws or impose an undue burden on the performance of the bank's functions.  Simon cannot and does not make these showings.  Because the national bank is not a party to this action and because the National Bank Act does not cover these Gift Cards, this action should be dismissed because there is no federal question before this Court.

---

[17] Irrespective of the OCC's view of the breadth of its own preemptive regulatory powers, it is axiomatic that no executive agency can enlarge the scope of its powers beyond those set forth by Congress in its enabling legislation.  Thus, the preemptive scope of OCC regulations cannot exceed the scope of the Act itself, as the courts have construed it.  See Barnett, supra (NBA preempts state law only to extent that state law directly conflicts with the Act or infringes upon business of banking).

b.    Simon's Commerce Clause Claim Also Does not Provide this Court with Subject Matter Jurisdiction.

Simon amended its Complaint to also seek a declaration from this Court that the Massachusetts gift certificate statute, as applied to the Simon Gift Card, improperly interferes with interstate commerce in violation of the Commerce Clause, U.S. Const. Art. I, § 8, cl. 3.  By this claim, Simon makes a second attempt to invoke the federal question jurisdiction of this court.

Simon's recitation of the commerce clause, however, does not take this matter outside the confines of the well-pleaded complaint rule.  Heichman v. American Telephone & Telegraph Co., 943 F. Supp. 1212, 1218 (D. Calif. 1995) (well-pleaded complaint rule required that Commerce Clause raised as a defense did not confer federal question jurisdiction, despite fact that focus of parties' litigation efforts had been whether local tax violated commerce clause, where complaint did not mention commerce clause, but relied expressly upon state law).  "Since a federal question does not appear from the face of plaintiff's complaint, it is irrelevant that the Commerce Clause issue appears to be central to this case."  Id. at 1217-1218  (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987)).  There is, in other words, no exception to the well-pleaded complaint rule when Commerce Clause claims, which are defenses to a state-court action, are plead as affirmative claims.  Id.

The Commonwealth's claims regarding Simon's violations of the Massachusetts gift certificate statute and Consumer Protection Act are state law claims, and the Commonwealth seeks relief pursuant to those claims.  There is nothing in the Commonwealth's complaint that demonstrates that a right to relief depends on the resolution of a question of federal law.

Simon's Commerce Clause argument is clearly raised only in defense against the Commonwealth's claims under state law, and as such, does not confer subject matter jurisdiction upon this court. *Cf.* City of Boston v. Smith & Wesson Corp. et al, 66 F. Supp.2d 246, 248-251 (D.Mass. 1999), on remand City of Boston v. Smith & Wesson Corp. et al., 12 Mass. L. Rptr. 225, 249-250 (Mass. Super. 2000), 2000 WL 1473568 (nature of relief under Commerce Clause not sufficient for complete preemption; "[a]lthough the Commerce Clause may affect the measure of plaintiff's relief should plaintiffs prove successful in their suit, this court need not and does not consider that issue in determining the basis for federal jurisdiction"). See also City of Camden v. Beretta U.S.A. Corp. et al., 81 F.Supp.2d 541, 544-548 (D. NJ 2000); City of Gary, Indiana v. Smith & Wesson Corp., 94 F. Supp.2d 947, 949-952. (D. Ind. 2000) (same).

While the Commerce Clause can, in some instances, preempt entire fields of commerce from state regulation, the situations in which courts have found such preemption are few. "This kind of invalidation of state regulation is rare, however, and is invoked only when a lack of national uniformity would impede the flow of interstate goods." Lorillard Tobacco Co., et al. v. Thomas Reilly, 84 F.Supp.2d 180, 199 (D. Mass. 2000). Even if Simon's commerce clause claims are meritorious, however, Simon's argument that the gift certificate statute improperly impedes interstate commerce is in the nature of a defense raised to the Commonwealth's complaint, and does not provide federal question jurisdiction in this court. Jacobs v. ABN Amro Bank N.V., 2004 WL 869557 (E.D.N.Y. 2004).

      B.     The Attorney General's Commencement of State Court Proceedings
             Requires that the Court Abstain Under the Principles of *Younger v. Harris.*

For the reasons stated in Argument Section A, above, the Court lacks federal question

jurisdiction over the complaint. Simon's "federal question" is nothing more than a putative defense to the Attorney General's right to enforce state law against the company, and does not constitute a basis for jurisdiction in this Court. Simon is not a national bank, no national bank is a party to this action, and the National Bank Act does not apply to the Simon Gift Card: state law governs this product. Even were this Court to find jurisdiction over Simon's claims, however, it should abstain from exercising same on the grounds of federalism and comity stated in Younger v. Harris, 401 U.S. 37 (1971).

Younger requires that federal courts not interfere with ongoing state proceedings when: (1) the state proceedings are judicial in nature; (2) the proceedings implicate important state interests; and (3) they provide an adequate opportunity to raise federal claims. Bettencourt v. Board of Registration in Medicine, 904 F. 2d 772, 776-777 (1st Cir. 1990). Younger requires dismissal of this case.

First, there are ongoing state proceedings that are "judicial in nature."[18]  After issuing a letter to Simon pursuant to G.L. c. 93A, §4 on November 1, 2004 indicating his intention to do so, the Attorney General filed suit against Simon in Suffolk Superior Court on November 15, 2004. The Attorney General's complaint asserts that Simon's Gift Cards violate both the Massachusetts Gift Certificate statute, G.L. c. 200A, §5D and G.L. c. 255D, § 1, and the Massachusetts Consumer Protection Act, G.L. c. 93A. The complaint neither cites to nor relies on federal law, and neither names nor requires the participation of Bank of America as a

---

[18]  As noted on page 3, infra, the Commonwealth has filed simultaneously herewith a motion to remand the underlying enforcement litigation to state court. Obviously, all of the Attorney General's arguments herein in favor of exercising abstention are predicated on the assumption that the Commonwealth's remand motion is granted, thereby re-instituting ongoing proceedings in state court.

defendant.

The Attorney General's state court action is effectively commenced by issuance of the letter to Simon pursuant to c. 93A, §4, and so the state court action precedes Simon's federal court filing. Even if this were not the case, where "the federal litigation [is] in an embryonic state and no contested matter [has] been decided" at the time a state case is filed, Younger applies. Doral v. Salem Inn, Inc., 422 U.S. 922, 929 (1975). See also Hicks v. Miranda (where state proceedings are commenced "after the federal complaint has been filed but before any proceedings of substance on the merits have taken place in federal court, the principles of Younger v. Harris should apply in full force"). In Hicks, the state court proceedings began after the federal complaint was filed and served; in Doran, after the federal court denied a temporary restraining order. Hicks, 422 U.S. at 349; Doran, 422 U.S. at 924-25. In each case, the Court required Younger abstention because no proceedings of substance on the merits had occurred in federal court before the state proceedings commenced.

First, Younger applies here because no proceeding of substance took place in federal court prior to the Attorney General's filing of his complaint in state court. Indeed, this is a particularly strong case in which to apply Hicks and Doran, because the federal complaint was filed in explicit anticipation of the state court action. Compl. Introd., ¶1. As the court said in Blount v. Redmond, 649 F. Supp. 319 (D. Me. 1986) (Cyr, Ch. J.), where a federal action is brought "in reaction to the threatened commencement . . . of proceedings in state court . . . such a complaint implicates Younger considerations even prior to the actual initiation of any state proceeding to the extent that it appears that the federal court plaintiff is seeking to involve the federal court in either an incipient or an ongoing state proceeding." Id. at 329; see also Getty

23

Petroleum Corp. v. Harshbarger, 807 F. Supp. 855, 857 (D. Mass. 1992) (applying Hicks and Doran where state court case was commenced after federal case was filed and preliminary injunction hearing scheduled). Since no activity has yet occurred in plaintiff's anticipatory case in this Court, it falls squarely within the rule of Hicks and Doran.[19]

Second, the issues at stake in the Attorney General's complaint implicate important state interests. The Attorney General is charged at G.L. c.12, §10 and G.L. c. 93A, § 4 with protecting the Commonwealth's consumers and the public interest in general. Comm. v. Mass. CRINC, 392 Mass. 79 (1984). The Attorney General's suit against Simon, which has sold hundreds of thousands of gift cards to Massachusetts consumers (Simon Am. Compl., ¶ 11), is in furtherance of that mandate. Gift cards are fast becoming a gift of choice for Massachusetts consumers, supplanting both the more familiar paper gift certificates and purchases of other goods or services. However popular, though, the Simon Gift Card is rife with consumer pitfalls. The recipient of a Simon Gift Card who puts it away to spend on a rainy day holds on to a significantly less valuable gift each month after six months pass, and a worthless plastic card at the end of one year from the purchase date, even if the recipient makes no purchases at all. The Massachusetts Gift Certificate Law, which by its terms applies to the Simon Gift Card, was enacted to prevent such a reality. In 2003 the Massachusetts Legislature amended the Massachusetts Gift Certificate Law, which contains important consumer protections, to

---

[19] Bettencourt did not address the timing issue. While Bettencourt said that "[i]n determining whether federal proceedings would interfere with ongoing state proceedings, the proper point of reference is the date plaintiff filed his federal complaint." 904 F.2d at 777 (emphasis in original), the facts of Bettencourt did not raise Hicks concerns because the plaintiff's federal case was filed after state judicial review of the decision of the Board of Registration in Medicine had begun. The First Circuit in Bettencourt thus was not presented with a timing issue, and it did not consider Hicks or Doran.

specifically include gift cards. But Simon flouts the Gift Certificate Law and, currently, consumers suffer the consequences as the value of their gifts to others is eroded by fees and, in some cases, erased: what appears to be a gilded coach is, after 12 months, a pumpkin. In his complaint the Attorney General asserts that Simon both dupes consumers and violates the Massachusetts Gift Certificate Law and the Massachusetts Consumer Protection Act by (1) charging fees, (2) setting a 1-year expiration date, and (3) failing to adequately disclose these fees and expiration date in a manner such that consumers can make meaningful purchasing decisions. The Attorney General's litigation furthers important state interests.

Third, the state proceedings will afford Simon an adequate opportunity to raise its federal claim. See Bettencourt, 904 F.2d at 778 & n.8 (an adequate opportunity exists unless state court deprives litigant from raising federal claims, regardless of whether those claims were actually raised). "[I]t cannot be doubted that the courts of the Commonwealth . . . will give federal constitutional issues, including preemption, the closest scrutiny." Brotherhood of Locomotive Engineers v. Massachusetts Commission Against Discrimination, 695 F.Supp. 1321, 1323 (D. Mass. 1988).

Fourth, and finally, Simon does not (and could not) claim " bad faith, harassment, or any other unusual circumstance") (Bettencourt, 904 F.2d at 779) in the state proceedings. "Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause . . . are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of Arecibo, 988 F.2d 252, 262 (1st Cir. 1993) (citations omitted). Because Simon can raise whatever valid federal claims it may have in the pending state court proceedings,

25

this court should abstain under <u>Younger</u> and dismiss this case.

              C.      <u>Alternatively, the Court Should Stay its Review of the Putative Federal Claims Pending Action on the State Claims by the Attorney General</u>

Even if the Court were to conclude that it has subject matter jurisdiction over Simon's putative federal claims (<u>see</u> Argument Section A, above), and decline to abstain under <u>Younger</u>, the Court should nevertheless abstain from exercising jurisdiction because the resolution of the pending issues of state law could obviate the need for any federal ruling. In these circumstances, <u>Railroad Comm'n v. Pullman Co.</u>, 312 U.S. 496 (1941), as recently applied in <u>Ford Motor Co. v. Meredith Motor Co.</u>, 257 F.3d 67 (1st Cir. 2001), and applied by this Court in <u>Phillip Morris Inc., v. Harshbarger</u>, 946 F. Supp. 1067, 1079 (D. Mass. 1996), independently supports abstention in this case.

Simon's federal complaint makes numerous allegations about the Attorney General's application of the Massachusetts Gift Certificate Law, the central theme being that the Simon Gift Card is not covered by the Law's definition of "gift card."  <u>See</u>, <u>e.g.</u>, Compl., ¶ 25. The resolution of Simon's federal claims may therefore turn on the interpretation and application of G.L. c. 255D: if, as Simon argues, the Massachusetts Gift Certificate Law does not apply to the Simon Gift Card, then there would be no need for this or a state court to decide federal constitutional claims.

These factors support <u>Pullman</u> abstention here. The First Circuit and this Court have abstained where "[a] dispositive state court interpretation of th[e] issue could eliminate entirely the need to address the constitutional issues." <u>Ford Motor Co.</u>, 257 F. 3d at 71 (quoting <u>Pustell v. Lynn Public Schools</u>, 18 F.3d 50, 53 (1st Cir. 1994)). Abstention is warranted where "there is

an action pending in state court that will likely resolve the state-law questions underlying the

federal claim . . ." Ford Motor Co., 257 F.3d at 72 (quoting Harris County Comm'rs Court v.

Moore, 420 U.S. 77, 83 (1974)); see Phillip Morris Inc., 946 F. Supp at 1079; Getty Petroleum

Corp., 807 F. Supp. at 859. In this case, the pending state court proceeding will likely resolve the

state issue underlying Simon's federal claim. Principles of comity and federalism counsel the

Court to stay the federal claims.

## V.  CONCLUSION

For all of the reasons set forth herein, this action should be dismissed or, in the

alternative, stayed pending the outcome of the underlying state court proceedings.


COMMONWEALTH OF MASSACHUSETTS

THOMAS F. REILLY
ATTORNEY GENERAL


By:  _____

Pamela S. Kogut, BBO #550805
Diane Lawton, BBO # 555584
Judith Whiting, BBO #600865
Assistant Attorneys General
Consumer Protection and Antitrust Division
One Ashburton Place
Boston, MA 02018
(617) 727-2200, exts. 2988, 2982, and 2959


Dated:      December  __16__ , 2004


27



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
### ONE ASHBURTON PLACE
### BOSTON, MASSACHUSETTS 02108-1598

THOMAS F. REILLY
ATTORNEY GENERAL

(617) 727-2200
www.ago.state.ma.us

November 1, 2004

**By Overnight Mail**

Richard S. Sokolov, President and Chief Operating Officer
Simon Property Group, Inc.
115 West Washington Street
Indianapolis, IN 46204

RE:    <u>Simon Gift Cards</u>

Dear Mr. Sokolov:

The Consumer Protection and Antitrust Division of the Massachusetts Attorney General's
Office has investigated the practices of your company in connection with the Gift Card your
company offers for sale in its 14 Massachusetts Simon Malls and online to Massachusetts
consumers. Based upon this investigation, the Attorney General has reason to believe that Simon
Property Group, Inc. ("Simon") has engaged in unfair and deceptive acts and practices in
violation of the Massachusetts Consumer Protection Act, G.L. c. 93A.

Specifically, this Office has reason to believe that Simon has sold and continues to sell
Gift Cards with a one-year expiration date, thus violating G.L. c. 200A, § 5D, the Massachusetts
gift certificate law, which provides that gift cards may not expire before the passage of seven (7)
years. Further, Simon imposes a variety of fees on gift card holders, in violation of G.L. c. 200A,
§ 1, which contemplates that fees not be charged *at all* to gift card holders. Violations of the
Massachusetts gift certificate law constitute violations of the Massachusetts Consumer Protection
Act, G.L. c. 93A. In addition, the fees Simon charges to Gift Card purchasers and holders are
unfair and deceptive in violation of the Massachusetts Consumer Protection Act: the fees are
unconscionable or otherwise unfair, and are not adequately disclosed to consumers, and are
therefore deceptive.

This letter is to inform you that the Attorney General is preparing to take legal action
against Simon. We will seek an appropriate judgment to bar future unlawful conduct and the
payment of civil penalties, costs of investigation including attorneys' fees, and restitution, if
appropriate, for consumers. However, we wish to give your company and your attorney an
opportunity to meet with us prior to commencing legal action.

In the event we are unable to resolve this matter, this will serve as formal notice, given

Mr. Sokolov
November 1, 2004
Page Two

pursuant to G.L. c. 93A, § 4, of the Attorney General's intention to bring suit against Simon not earlier than five (5) days after you receive this letter, based on the violations set forth above.

We are available to meet with you to discuss this case and to attempt to reach a settlement prior to instituting suit.

Very truly yours,

Pamela Kogut
Diane Lawton
Judith Whiting
Assistant Attorneys General
Consumer Protection and
Antitrust Division
(617) 727-2200, ext. 2988

cc:    Marilyn D. Stempler, Esq.  (*By facsimile*)