UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SPGGC, INC.<br>    Plaintiff<br><br>                v.<br><br>THOMAS F. REILLY, Attorney General<br>    Defendant | Civil Action No. 04-12398-RCL |

**PLAINTIFF'S OPPOSITION TO
THE ATTORNEY GENERAL'S MOTION TO DISMISS**

    The Attorney General argues that because SPGGC, Inc. will not prevail on the merits of its claims, this Court lacks subject matter jurisdiction. As this is not the proper standard for determining whether this Court has jurisdiction, and, more importantly, because the Plaintiff's complaint presents federal questions, the Defendant's motion should be denied.

**STATEMENT OF FACTS**

    Simon Property Group, Inc. operates malls and shopping centers in more than thirty states. Compl., ¶ 6. SPGGC, Inc., an affiliate of Simon Property Group, Inc., (collectively, "Simon"), is responsible for the nationwide Simon Giftcard program. Compl., ¶¶ 5-6. The Simon Giftcard is in the form of a credit-card-sized plastic card with a magnetic strip on the back. Compl., ¶ 8. The front of the card bears a Simon insignia, as well as a VISA logo. Compl., Exhibit A. Bank of America ("BofA") is the national bank that issues the Simon Giftcard. Compl., ¶ 14. BofA is a VISA member bank, and therefore can issue VISA prepaid cards. Compl., ¶ 14. As stated on the back of every Giftcard, the card itself is the property of BofA. See Compl., ¶ 14, Exhibit A. BofA requires that all Giftcards and cardholder agreements identify BofA as the issuer. Compl., ¶ 14. The terms and conditions for the Simon Giftcard and the design of the card carrier in which the Giftcards are presented must be reviewed and approved by BofA. Compl., ¶¶ 16-17. Every time a change is made to the terms and conditions

or the design of the card carrier, it must be reviewed and approved by BofA. Compl., ¶¶ 16-17. BofA also reviews and must approve the physical properties and design of the front and back of the Giftcard itself. Compl., ¶ 17.

Currently, there are 159 malls selling Simon Giftcards in 35 states, including 14 in Massachusetts. Compl., ¶¶ 5-6. Simon also promotes Giftcards for sale at its internet website (www.simon.com). Compl., ¶ 6. Unlike a traditional retail gift certificate, the Simon Giftcard can be used worldwide anywhere VISA debit cards are accepted, including locations not affiliated with Simon Malls. Compl., ¶¶ 9-10. Also unlike most gift certificates, a Simon Giftcard can be replaced if lost or stolen, and the Giftcard holder is not responsible for the unauthorized use of the Giftcard. Compl., ¶ 9.

## PRESENT CONTROVERSY

In November 2004, the Massachusetts Attorney General notified Simon that the sale of the Simon Giftcards at various malls in Massachusetts and over the internet allegedly violated provisions of the Massachusetts Gift Certificate Law, M.G.L. c. 200A, §5D and M.G. L. c. 255D §1, and the Massachusetts Consumer Protection Act, M.G.L. c. 93A (hereinafter collectively referred to as, the "Massachusetts Gift Certificate Law"). In particular, the Attorney General claimed that Simon Giftcards cannot expire for seven years and Simon cannot charge any administrative fees. Compl., ¶¶ 26-31. In response, Simon filed this declaratory judgment action against the Attorney General, alleging that the National Bank Act preempts certain provisions of the Massachusetts Gift Certificate Law. In its Second Amended Complaint, Simon further asserted that the application of the Massachusetts Gift Certificate Law to the Simon Giftcard improperly interferes with interstate commerce in violation of the Commerce Clause of the United States Constitution.

# ARGUMENT

The district courts have original subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim arises "under the Constitution, laws, or treaties of the United States" when "a right or immunity created by the Constitution or laws of the United States" is an element of plaintiff's claim." *Phillips Petroleum Co. v. Texaco, Inc.*, 415 U.S. 125, 127 (1974) (per curiam); *Illinois v. General Elec. Co.*, 683 F.2d 206, 211 (7th Cir. 1982) ("The commerce and supremacy clauses of the Constitution create rights enforceable in equity proceedings in federal court.").

## I. THIS COURT HAS SUBJECT MATTER JURISDICTION OVER SIMON'S CLAIM THAT THE NATIONAL BANK ACT PREEMPTS CERTAIN PROVISIONS OF THE MASSACHUSETTS GIFT CERTIFICATE LAW

In both its initial and Second Amended Complaint, Simon alleges that enforcement of the Massachusetts Gift Certificate Law, is preempted by the National Bank Act of 1864, 12 U.S.C. §21 *et seq*. In response, the Attorney General makes the untenable argument that the "well-pleaded complaint" rule bars this action. (Att'y Gen. Br. at 5-9, 20-21.)[1] However, the Attorney General fails to recognize that this Court has jurisdiction by virtue of the exception to the "well-pleaded complaint" rule set forth in *Ex Parte Young* and its progeny.

As the Supreme Court and the Circuit Courts have repeatedly found, when a plaintiff seeks affirmative and coercive relief to prevent state interference with federal rights, an independent federal question is presented and the court has jurisdiction pursuant to 28 U.S.C. §1331. *See Ex Parte Young*, 209 U.S. 123, 160-62 (1908); *see also Verizon Md., Inc. v. Publ. Serv. Comm'n of Md.*, 535 U.S. 635, 642 (2002); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96

---

[1] Under the "well-pleaded complaint" rule, jurisdiction must be founded upon the face of a complaint, and may not be found solely on the basis of anticipated federal defenses to purely state law claims. *E.g., Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (unless exception applies, rule bars removal if complaint is based purely on state law, even if preemption is a defense).

n.14 (1983); *Local Union No. 12004, United Steelworkers of America v. Massachusetts*, 377 F.3d 64, 75 (1st Cir. 2004) (reversing dismissal for lack of subject matter jurisdiction because "*Verizon* and *Shaw* make clear that in suits against state officials for declaratory and injunctive relief, a plaintiff may invoke the jurisdiction of the federal courts by asserting a claim of preemption"); *Stone & Webster Eng'g Corp. v. Ilsley*, 690 F.2d 323, 327-27 (2d Cir. 1982) (expressly distinguishing *Skelly Oil Co. v. Phillips Petroleum Co., 229 U.S. 667, 671 (1950)* and *Public Serv. Comm'n v. Wycoff*, 344 U.S. 237 (1952), because neither sought to prevent threatened or actual state interference with federal rights)[2], *aff'd*, 463 U.S. 1220 (1983). Seeking declaratory and injunctive relief, as Simon did, is the accepted way of obtaining such relief. *E.g., Verizon*, 535 U.S. at 642; *Shaw*, 463 U.S. at 96 n.14.

Under *Ex Parte Young* and its progeny, there is no question that federal courts have jurisdiction over suits seeking prospective relief against state officials who threaten, and are about to commence, proceedings that would violate the Constitution. *See, e.g., Ex Parte Young*, 209 U.S. at 143-45, 156, 161-62. In a situation such as the one that exists here (i.e. the Attorney General threatened to, and then did, sue Simon), the affected party does not need to sit back and wait to be sued to raise federal constitutional rights as a defense, but instead may invoke federal jurisdiction to prevent future violations. *Id.* at 143-45, 161-62 (federal jurisdiction exists where plaintiff sought to enjoin threatened enforcement action); *see, e.g., Verizon*, 535 U.S. at 645 (no need to determine whether state commission waived immunity

---

[2] In *Wycoff*, there was "no evidence whatever of any past, pending or threatened action" by the state authorities against the federal plaintiff, ultimately making the case one seeking an advisory opinion. 344 U.S. at 240. *Skelly Oil* involved a dispute solely between two private parties in which one anticipated a federal defense the other might have raised; no state officials threatened or brought any proceedings, meaning it only involved a private person seeking to vindicate rights afforded solely under state law. 339 U.S. at 670-73. While there may be some confusion behind the distinction, *see Playboy Enter., Inc. v. Public Service Comm'n*, 906 F.2d 25, 29-31 (1st Cir. 1990), it is clear that there is federal subject matter jurisdiction over actions, such as this one, where a plaintiff affirmatively seeks relief from threatened or pending state actions that are preempted or otherwise unconstitutional. *See, e.g., Verizon*, 535 U.S. at 642.

because request for declaratory and injunctive relief to prevent enforcement of an order in contravention of federal law fit within *Ex Parte Young* doctrine); *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 29 (1996) (bank filed action for declaratory and injunctive relief based on preemption). As the Supreme Court has said:

> It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. . . . A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.

*Shaw*, 463 U.S. at 96 n.14.

The Supreme Court and Circuit Courts have time and time again applied the rule that federal jurisdiction exists <u>independently</u> under 28 U.S.C. §1331 when a plaintiff seeks affirmative and coercive relief to prevent state interference with federal rights. *E.g., Ex Parte Young*, 209 U.S. at 160-62; *see also, e.g., Verizon*, 535 U.S. at 642; *Shaw*, 463 U.S. at 96 n.14; *Local Union No. 12004*, 377 F.3d at 75. Seeking declaratory judgment and injunctive relief is the way to obtain such relief. *See, e.g., Verizon*, 535 U.S. at 642; *Shaw*, 463 U.S. at 96 n.14. This is exactly what Simon did, and therefore, this Court has jurisdiction over Simon's claims for prospective relief from the Attorney General's attempted enforcement of the Massachusetts Gift Certificate Law.[3]

### A. Simon's Claims Contain More Than Sufficient Allegations For This Court to Have Subject Matter Jurisdiction.

---

[3] Although the Attorney General's suit against Simon, filed three days after Simon's Complaint, mooted the particular form of injunctive relief Simon initially requested, this development does not rob the Court of jurisdiction. *See Lawrence County v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256, 259 n.6 (1985) (describing as erroneous, the Eight Circuit's decision that district court did not have jurisdiction over an action only seeking declaratory judgment on preemption issue); *First Nat'l Bank of Eastern Arkansas*, 907 F.2d 775, 776 n.3 (8th Cir. 1990) ("Jurisdiction is not defeated simply because a plaintiff requests declaratory relief rather than an injunction.").

Despite the fact that Simon's Complaint fits within the exception set forth in *Ex Parte Young*, the Attorney General ultimately argues that this Court lacks jurisdiction because he believes Simon will not prevail on the merits. (Att'y Gen. Br. at 10-19.) This argument, however, puts the cart before the horse, and cannot serve as a basis for dismissal.

It is well settled that "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [plaintiff] could actually recover." *Bell v. Hood*, 327 U.S. 678, 682 (1946) (federal courts have jurisdiction over claims for recovery directly under the Constitution, unless an exception applies). In determining whether subject matter jurisdiction exists, the Court is not expected to analyze the merits of the case. *Verizon*, 535 U.S. at 646 ("The inquiry into whether suit lies under *Ex Parte Young* does not include an analysis of the merits of the claim."). Instead, to determine whether *Ex Parte Young* applies, thereby granting jurisdiction, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon*, 535 U.S. at 645 (claims for injunctive relief seeking to restrain state officials from enforcing an order that is preempted by federal law "clearly satisfies [this] 'straightforward inquiry.'"); *Carlson v. Principal Financial Group*, 320 F.3d 301, 306 (2d Cir. 2003) (reversing dismissal for lack of subject matter jurisdiction because complaint, on its face, sought relief under ERISA).

The only exceptions to this rule "are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682-83. While the

Attorney General argues that Simon will lose on the merits of its claim, even he does not contend that Simon's claims are "wholly insubstantial or frivolous."

### B. Simon's Claims Are Not Completely Devoid of Merit, And Therefore, Cannot Be Dismissed For Lack Of Subject Matter Jurisdiction.

"It is firmly established . . . that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, i.e. the courts' statutory or constitutional *power* to adjudicate the case." *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 89 (1998) (emphasis in original); *see Verizon*, 535 U.S. 635, 646 ("the inquiry into whether suit lies under *Ex Parte Young* does not include an analysis of the merits of the claims."). It is not appropriate to dismiss for lack of subject matter jurisdiction unless a claim is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co.*, 523 U.S. at 89, 101-02 (jurisdictional question separate from merits because "[f]or a court to pronounce upon the meaning or constitutionality of a state or federal law when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires."); *see Local Union No. 12004*, 377 F.3d at 765 n.10 (claim for relief supports jurisdiction if claim is colorable, therefore there is no need to decide if plaintiff will prevail on preemption claim). Simon's claims are hardly devoid of merit and should not be dismissed.

#### 1. Simon's Claim That Certain Provisions of The Massachusetts Gift Certificate Law are Preempted by The National Bank Act Is Supported By Ample Authority.

As stated above, the Simon Giftcard is issued and owned by a national bank, BofA, which is subject to the regulatory authority of the Office of the Comptroller of the Currency ("OCC") under the National Bank Act ("NBA"). State laws seeking to regulate products issued by national banks will be preempted where imposition of the state law would conflict with federal law, frustrate the purposes of the NBA, or impair the efficiency of national banks to

7

discharge their enumerated or incidental powers. *See generally Bank of America v. City & County of San Francisco*, 309 F.3d 551, at 561 (9th Cir. 2002). OCC regulations also provide that "state laws that obstruct, impair, or condition a national bank's ability to fully exercise the power in question are not applicable" to such banks. OCC Final Rule, 69 Fed. Reg. 1904, 1912 (Jan. 13, 2004).

Because of the involvement of BofA in the issuance of the Giftcard, Simon asserts that, at a minimum, enforcement of the prohibition in the Massachusetts Gift Certificate Law on expiration dates sooner than seven years is preempted. The OCC has specifically addressed the propriety of expiration dates on stored value cards, stating that a card issuer would be expected to disclose to a cardholder certain fundamental contractual terms of use including "expiration dates for the card." OCC Interpretive Letter No. 737, 1996 WL 763025 at *2 n.6 (Dec. 1996) (Appx., Ex. 13)[4]; *see also* OCC Bulletin, "Stored Value Card Systems," No. 96-48, 1996 WL 528481 at *2 (Sep. 10, 1996) (Stored value cards "could have specific features such as limits on the amount of electronic cash that can be stored or cards that expire after some established time period.").[5]

The preemption doctrine prohibits enforcement of a state regulation of a product issued by a national bank that conflicts with a federal banking regulation, regardless of whether it is offered directly by the national bank or through a third party. *See Krispin v. May Department Stores Co.*, 218 F.3d 919, 922-24 (8th Cir. 2000) (claims against department store contesting late fees charged on store's credit card preempted where national bank issued credit and is

---

[4] Citations to the Appendix refer to the collection of regulations, bulletins, letters and state court cases originally submitted as an Appendix to Simon's Motion for Preliminary Injunction.

[5] The OCC has also provided guidance to financial institutions interested in issuing stored value products, suggesting that such institutions disclose information about the product, including the terms and conditions and expiration dates, to ensure informed use. OCC Bulletin, "Guidance on Electronic Financial Services and Consumer Compliance FFIEC Guidelines," No. 98-31, 1998 WL 460874, *9 (July 30, 1998) (Appx., Ex. 7).

therefore the originating entity); *see also* OCC Preemption Determination, 66 Fed. Reg. 28593, 28594-96 (May 23, 2001) (determining that NBA preempts state law regarding licensing where bank uses third parties in connection with offering and giving motor vehicle loans).[6]

Moreover, nothing in the January 5, 2005 letter from Daniel P. Stipano, Acting Chief Counsel to the Office of the Comptroller of the Currency ("OCC"), addressed jointly to the Attorney General of the Commonwealth of Massachusetts and counsel to SPGGC[7], serves to contravene the various OCC authorities cited above. The OCC acknowledges that its letter is not based upon a full review of the facts; indeed, the letter specifically states that the facts are complicated and appear to be disputed.

Additionally, the form of the OCC's expression of its views in this area is important to note. A federal agency's interpretation of the laws and regulations which define its authority is generally afforded some degree of deference in the courts when that interpretation is arrived at after formal adjudication or notice-and-comment rulemaking, under the Administrative Procedure Act, processes which offer an opportunity for the public and interested parties to more fully present their views and argue the merits of the proposed interpretation. The OCC routinely invokes this process as part of its rulemaking and issuance of interpretative rulings. A two-page letter to the parties in litigation is clearly not the legal or functional equivalent of a full and formal interpretive ruling within the meaning of the APA, and should not be accorded the same weight. *See Christensen v. Harris County*, 529 U.S. 576, 586 (2000) ("[I]interpretations

---

[6] In Interpretive Letter No. 737, the OCC granted permission for a national bank to provide its stored-value card services through an agent who would then sell the cards to the system customer, a third party in the same position as Simon in this case. *Id.* OCC Interpretive Letter No. 737, 1996 WL 763025, at *1-3 (Dec. 1996). The bank's agent had no direct contract with cardholders, but instead would have one agreement with the system customer (similar to Simon in this case) and a separate agreement with the issuer (similar to BofA here) and both the bank and the system customer would have their names printed on the card. *Id.* at *2.

[7] This letter is the subject of the Attorney General's Motion For Leave to File New Authority in Support of His Motion to Dismiss filed with this Court on January 11, 2005.

contained in formats such as opinion letters are entitled to respect . . . but only to the extent that those interpretations have the power to persuade.") (internal quotations omitted).[8]

Even if this Court were to conclude that the OCC's belief, as expressed in its letter to the parties and relating only to the issue of preemption of Simon's fees, was somehow dispositive in the instant case on the issue of fees, there is nothing to preclude this Court, after a full consideration of the facts, from drawing its own conclusions under the law as to the applicability of federal preemption as it relates to various other aspects of the Simon Giftcard Program.

Given the above-referenced authority regarding preemption, and the absence of any dispositive authority to the contrary from the OCC, the Attorney General cannot assert that Simon's claims under the National Bank Act are so completely devoid of merit that this Court cannot exercise its jurisdiction in this case, and the Motion to Dismiss should be denied.[9]

## II. THIS COURT HAS JURISDICTION OVER THE COMMERCE CLAUSE CLAIM.

This Court also has subject matter jurisdiction over Simon's Commerce Clause claim, which, by definition, is a civil action "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Although the language of [the Commerce] Clause speaks

---

[8] Even if the Court were to give deference to the OCC's statement of its belief that "state restrictions of Simon's fees" would not be preempted by OCC's regulations or the National Bank Act, this is, at best, an expression of the OCC's belief insofar as it relates to one aspect of Simon's Giftcard program (its fees). Even assuming the OCC is referring to any and all fees charged by Simon under the program (the OCC does not distinguish between and among the types of fees in the program), there are other aspects of the program, relating to such things as customer notice, expiration and renewal, that are clearly **not** addressed by the OCC.

[9] In addition to this federal authority, two state courts found that federal preemption is applicable to the Simon Giftcard in two recent cases in which consumers made similar arguments as the Attorney General does in his enforcement action. In *Martin v. Simon Property Group Inc.*, the trial court dismissed three consolidated complaints against Simon, based, in part, on the court's conclusion that the plaintiffs' claims were preempted by federal law. No. 4317-000002 (Cal. Sup. Ct. May 25, 2004) (Appx., Ex. 17). In *Lonner v. Simon Property Group, Inc.*, the Court dismissed the claim that imposition of administrative fees on the Simon Giftcard was a deceptive act and that Simon was unjustly enriched. Index No. 2246/04 (September 23, 2004, N.Y. Sup. Ct., Rudolph, J.) (Appx., Ex. 18). The *Lonner* court held that "even accepting as true the facts alleged in the pleading and submissions in response to the motion, and according the plaintiff the benefit of every possible favorable inference as must be done . . . it is clear that the plaintiff's claims are preempted by federal law."

only of Congress' power over commerce, the [Supreme] Court has recognized that it also limits the power of the States to erect barriers against interstate trade." *Dennis v. Higgins*, 498 U.S. 439, 446 (1991) (internal quotations omitted) (stating that injunctive and declaratory relief are appropriate and reversing dismissal of claim under 42 U.S.C. § 1983 for violation of Commerce Clause). "The Court has often described the Commerce Clause as conferring a 'right' to engage in interstate trade free from restrictive state regulation." *Id.* at 448; *see Pelican Chapter, Assoc. Builders & Contractors, Inc. v. Edwards*, 901 F. Supp. 1125 (M.D. La. 1995) ("Since these plaintiffs claim that the enforcement of [state regulation] deprives them of rights secured by the Commerce Clause of the Constitution, this court has subject matter jurisdiction."). Because "individuals injured by state action that violates . . . the Commerce Clause may sue and obtain injunctive and declaratory relief," Simon's claim is one arising under the Constitution and this Court has subject matter jurisdiction. *Dennis*, 498 U.S. at 447.

Despite the Commerce Clause Claim arising under the Constitution, the Attorney General contends that the Court does not have subject matter jurisdiction over the Commerce Clause claim because of the well-pleaded complaint rule. Even if the well-pleaded complaint rule were to apply, as with the preemption claims, the Attorney General ignores the exception to the rule created by *Ex Parte Young*. *E.g. Verizon*, 535 U.S. at 642; *Shaw*, 463 U.S. at 96 n. 14. Because Simon sought affirmative relief from state violation of constitutional rights, this Court has jurisdiction. *Id.*

Furthermore, the Attorney General cannot contend that Simon's claim is so devoid of merit that it does not involve a federal controversy. *Steel Co.*, at 89. As such, this Court has jurisdiction over this claim.

Simon Giftcards are sold in more than 30 states, and over the internet. The use of the Simon Giftcards is not limited to Massachusetts; rather, the Giftcards may be used nationwide and worldwide. The Giftcards can be: 1) sold in Massachusetts for use elsewhere; 2) sold elsewhere and given to Massachusetts residents for use here; or 3) sold through the internet and mailed to recipients or buyers in Massachusetts or elsewhere for use anywhere.

The First Circuit explained the following with respect to the application of the Commerce Clause:

> [A] state statute which has an "extraterritorial reach," whether intended or not, is a *per se* violation of the Clause. Thus, when a state statute regulates commerce occurring wholly outside the state's borders or when it has a practical effect of requiring out-of-state conduct to be carried on according to in-state terms, it will be invalid.

*Philip Morris, Inc. v. Reilly*, 2001 WL 1215365 at *13 (1st Cir. 2001) (citing *Pharm. Research and Mfrs. of Am. v. Concannon*, 249 F.3d 66, 79 (1st Cir. 2001)) (emphasis added). It is not possible for Simon to control or to determine whether a particular Giftcard sold out-of-state has made its way into Massachusetts, or vice versa. As such, the impact of Massachusetts law on Simon Giftcards cannot be limited to the Commonwealth and applying state law to the Giftcard to prohibit expiration dates and administrative fees on every card used in Massachusetts, regardless of where it was purchased or whether it was purchased over the internet, would have an extraterritorial reach and violate the Commerce Clause. *See Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult, if not impossible, for a state to regulate internet activities without projecting its legislation into other states.") (internal quotations omitted).

Furthermore, consumers and merchants alike would bear the burden of determining the various terms and conditions of the Giftcard depending on the state in which it was sold and/or used. Giftcards used in Massachusetts but sold in other states or over the internet could have

different terms than those purchased in Massachusetts. Merchants and consumers in the Commonwealth, as well as outside of it, would confront this problem.

Simon has a viable claim that the Massachusetts Gift Certificate Law, as applied to the Simon Giftcard, constitutes an improper interference by Massachusetts in interstate commerce in violation of the Commerce Clause of the United States Constitution. This Court has jurisdiction over the claim, such that the Motion to Dismiss should be denied.

### III. ABSTENTION IS NOT PROPER IN THIS CASE.

The Court should refuse to abstain from adjudication of this matter, which is properly before the Court, because neither *Younger* nor *Pullman* abstention are appropriate in this case.

#### A. Abstention Pursuant to the *Younger* Doctrine is Not Required.

Acceding to the Attorney General's abstention request would improperly broaden the scope of *Younger* abstention to require the federal courts to abdicate jurisdiction whenever a party sues in federal court pursuant to *Ex Parte Young* and the state responds with an action of its own in state court, self-servingly proclaiming that the action serves "an important state interest." *Younger* does not require a federal court to "abandon jurisdiction it has properly acquired simply because a similar suit is later filed in a state court." *Town of Lockport v. Citizens for Community Action*, 430 U.S. 259, 264 n. 8 (1977); *accord Planned Parenthood v. Bellotti*, 868 F.2d 459, 466 (1st Cir. 1989) ("the simple existence of parallel state proceedings is *not* a reason to abstain.") (emphasis in original).

The Supreme Court has cautioned that *Younger* abstention is a narrow exception to *Ex Parte Young,* permitting a federal court to decline jurisdiction over a case properly brought against a state official only where "extraordinary circumstances...justify abdication of the virtually unflagging obligation to exercise the jurisdiction given the federal courts." *Deakins v. Monahan*, 484 U.S. 193, 204 (1988); *accord Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716

(1996) ("federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress"); *Ankenbrandt v. Richards*, 504 U.S. 689, 705 (1992) ("[a]bstention from the exercise of federal jurisdiction is the exception, not the rule") (citing *Colorado River Water*, 424 U.S. at 813).

As interpreted by the First Circuit, the "extraordinary" and "exceptional" circumstances required for *Younger* abstention are present *only* if it is clear that the state action involves *"vital state interests." Chaulk Servs., Inc. v. Massachusetts Commission Against Discrimination*, 70 F.3d 1361, 1368 (1st Cir. 1995) (emphasis added). Such circumstances do not exist in this case where consumers have purchased hundreds of thousands of Giftcards in Massachusetts and the provisions of Massachusetts Gift Certificate Law that the Giftcard allegedly violates have been in effect since June 1, 2003. If protecting Massachusetts' consumers from the alleged harm to which the Giftcard exposes them was such a vital interest, the Attorney General would not have waited one-and-a-half years since the law went into effect to seek to enforce the law against Simon.

While Massachusetts courts certainly have an interest in adjudicating claims based on state law, staying those state proceedings until the federal issues that are the crux of the litigation—namely, whether applying state law would violate the United States Constitution—are resolved will not offend the notions of state sovereignty and comity on which *Younger* abstention is based. Therefore, this Court should not abstain in this case.

### B. Abstention Pursuant to the *Pullman* Doctrine is Not Required.

Contrary to the Attorney General's argument, abstention under the *Pullman* doctrine is not required because (1) Simon does not bring any claims which may be resolved under state law in its Second Amended Complaint; and (2) courts typically refuse to abstain under *Pullman* when the constitutional claims are based on federal preemption under the Supremacy Clause.

Under the *Pullman* doctrine, a federal district court should abstain from deciding federal constitutional issues where a state court's resolution of a pendent claim arising under state law may obviate the need to decide a case based on constitutional interpretation. *See R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 501 (1941); *see also Santasucci v. Gallen*, 607 F.2d 527, 529 (1st Cir. 1979). Simon, however, does not plead a pendent state law claim in its First or Second Amended Complaint. Rather, Simon exclusively brings claims arising under the Supremacy Clause and the Commerce Clause.

Even if the Court were to accept the Attorney General's proposition that Simon's claims present a dispute over the interpretation of state law, the resolution of which might preclude the need for constitutional interpretation, the Court should not abstain. Where the constitutional question is based on a claim of federal preemption, the true issue before the court is one of federal statutory interpretation and it is settled that "abstention should not be ordered on *Pullman* grounds" as to claims based on the Supremacy Clause. 17A Wright, Miller, & Cooper, *Federal Practice and Procedure* § 4242, at 34 (1988).[10]

*Pullman* abstention "rests on the desirability of avoiding unnecessary decision of constitutional issues." 17A Wright, Miller & Cooper, *Federal Practice and Procedure* § 4242, at 33-34. Preemption—though ultimately a constitutional question under the Supremacy

---

[10] *See, e.g., Propper v. Clark*, 337 U.S. 472, 489-90, 492 (1949) ("[w]here case involves a nonconstitutional federal issue…the necessity for deciding which depends upon the decision on an underlying issue of state law, the practice in federal courts has been, when necessary, to decide both issues"); *United Services Auto. Ass'n v. Muir*, 792 F.2d 356, 363-64 (3d Cir. 1986) ("preemption claims under the supremacy clause are not substantial federal constitutional issues for which Pullman abstention might be appropriate"), *cert. denied*, 479 U.S. 1031 (1987); *Fleet Bank v. Burke*, 990 F. Supp. 50, 53 (D. Conn. 1997) (noting futility of abstaining to "await a state supreme court's interpretation of a state statute which may in fact prove to be preempted by federal law and therefore unenforceable"), *vacated on other grounds*, 160 F.3d 883 (2d Cir. 1998), *cert. denied*, 527 U.S. 1004; *Agency Rent-A-Car, Inc. v. Connolly*, 542 F.Supp. 231, 235 (D. Mass. 1982) (abstention inappropriate where both federal law and a state law apply and the resolution of the case turns on an analysis of policies of federal law), *vacated on other grounds*, 686 F.2d 1029 (1st Cir. 1982); *International Longshoremen's Ass'n v. Waterfront Comm'n of New York*, 495 F. Supp. 1101, 1112-14 & nn. 15-18 (S.D.N.Y. 1980) ("The weight of authority seems in fact strongly against treating abstention as applicable to pre-emption decisions, even though they might be based ultimately on the Supremacy Clause."), *aff'd in part and rev'd in part on other grounds*, 641 F.2d 666 (2d Cir.), *cert. denied*, 454 U.S. 966 (1981).

Clause—"is essentially an exercise in construing [a] federal statute," with the application of the Supremacy Clause "pos[ing] no novel constitutional problem" once the statute's "meaning has been determined." *Id.*

The Attorney General bases his *Pullman* abstention argument on Simon's original complaint, rather than on Simon's Amended Complaints, which do not involve any statutory interpretation of state law. As the First Circuit explained in *Cuesnongle v. Ramos*:

> There are two options for a post-*Pennhurst* plaintiff who wishes to bring a claim for injunctive relief against state officials under alternative federal and state theories: either to litigate both federal and state claims in state court, or to bifurcate the litigation so that the state claims are heard in state court and the federal claims are heard in federal court.

835 F.2d 1486, 1497 (1st Cir. 1987). Simon has chosen federal court as the forum in which to resolve the federal questions of whether the Massachusetts Gift Certificate Law is preempted and whether it violates the Commerce Clause. Thus, Simon has chosen to follow the First Circuit's instructions to litigate "the federal claims in federal court and then, if unsuccessful, brin[g] the state claims in state court." *Id.* at 1497, n. 8. Simon's federal claims are wholly independent of any potential defenses it might raise to the Attorney General's complaint in state court, and this Court should resolve the federal questions.

## CONCLUSION

This Court has subject matter jurisdiction over Simon's claims for prospective relief pursuant to the well-established rule set forth in *Ex Parte Young*, and abstention is not required in this case because there are no extraordinary circumstances justifying the court's refusal to adjudicate Simon's claims. Therefore, the Attorney General's Motion to Dismiss should be denied.

## REQUEST FOR ORAL ARGUMENT

Defendant's Motion to Dismiss raises a number of issues regarding federal subject

matter jurisdiction and abstention as well as complex issues of preemption under the National Bank Act and application of the Commerce Clause. Because of the complexity of these issues and the importance of these issues to Plaintiff—namely that resolution of these issues will seriously impact Plaintiff's business—Plaintiff believes that oral argument will assist the Court. Therefore, Plaintiff hereby requests, pursuant to Local Rule 7.1(D), that a hearing be scheduled on Defendant's Motion to Dismiss.

                SPGGC, INC.,

                Plaintiff

                /s/ Margaret M. Pinkham
                Paul W. Shaw (BBO No. 455500)
                Margaret Pinkham (BBO No. 561920)
                Daniel J. Brown (BBO No. 654459)
                Brown Rudnick Berlack Israels LLP
                One Financial Center
                Boston, MA 02111-2600
                Telephone:  617-856-8200
                Facsimile:  617-856-8201
                E-mail:pshaw@brownrudnick.com
                E-mail:mpinkham@brownrudnick.com
Dated:  January 28, 2005       E-mail:dbrown@brownrudnick.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties below by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Pamela S. Kogut, Esq.
Diane Lawton, Esq.
Judith Whiting, Esq.
Assistant Attorneys General
Consumer Protection and Antitrust Division
One Ashburton Place
Boston, MA  02018

Dated:  January 28, 2005

                         /s/ Margaret M. Pinkham
Margaret M. Pinkham

#1325191 v\2 - browndj - #$v02!.doc - 20345/24

EXHIBIT A







Merchants cannot access your card balance.

To check your balance:
- 
- 
- 

When using your Simon Giftcard to make a purchase that is greater than the amount on the card, tell the cashier you would like to pay the difference first, and then use your card to pay the balance.